**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                                      |     |           |
|------------------------------------------------------|-----|-----------|
| MUSTAFA RAOOF, M.D.                                   | )   |           |
| 616 W. Foothills Blvd., Apt. A                       | )   |           |
| Monrovia, CA 91016                                   | )   |           |
|                                                      | )   |           |
| SIDRA HAYE                                           | )   | Civ. No.  |
| 616 W. Foothills Blvd., Apt. A                       | )   |           |
| Monrovia, CA 91016                                   | )   |           |
|                                                      | )   |           |
| M. R.                                                | )   |           |
| 616 W. Foothills Blvd., Apt. A                       | )   |           |
| Monrovia, CA 91016                                   | )   |           |
|                                                      | )   |           |
|          Plaintiffs,                                 | )   |           |
|                                                      | )   |           |
| v.                                                   | )   |           |
|                                                      | )   |           |
| REX W. TILLERSON, United States                      | )   |           |
| Secretary of State                                   | )   |           |
| U.S. Department of State                             | )   |           |
| 2201 C. Street N.W.,                                 | )   |           |
| Washington, D.C. 20520                               | )   |           |
|                                                      | )   |           |
| MARCIA PRYCE, Chief, Waiver Review                   | )   |           |
| Division, United States Department of State          | )   |           |
| Waiver Review Division, CA/VO/L/W                    | )   |           |
| U.S. Department of State                             | )   |           |
| SA-17, 11th Floor                                    | )   |           |
| 600 19th Street, N.W.                                | )   |           |
| Washington, D.C. 20522                               | )   |           |
|                                                      | )   |           |
| JOHN F. KELLY, Secretary of Homeland                 | )   |           |
| Security,                                            | )   |           |
| U.S. Department of Homeland Security                 | )   |           |
| Washington, D.C. 20528                               | )   |           |
|                                                      | )   |           |
| JAMES MCCAMENT, Acting Director,                     | )   |           |
| U.S. Citizenship and Immigration Services            | )   |           |
| Office of the Director MS 2000                       | )   |           |

U.S. Citizenship and Immigration Services          )
20 Massachusetts Avenue, N.W.                       )
Washington, D.C. 20529-2000                         )
                                                    )
KATHY A. BARAN, Director, California               )
Service Center,                                     )
U.S. Citizenship and Immigration Services          )
USCIS California Service Center                     )
P.O. Box 10129                                      )
Laguna Niguel, California 92607-1012               )
                                                    )
JEFFERSON B. SESSIONS,                             )
Attorney General of the United States              )
U.S. Department of Justice                          )
950 Pennsylvania Avenue, N.W.                       )
Washington, D.C. 20530-0001                        )
                                                    )
        Defendants.                                 )
                                                    )
_____ )

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

Plaintiffs by their undersigned lawyer allege as follows:

### I.  Parties

1.      Plaintiff Mustafa Raoof, M.D., ("Dr. Raoof") is a citizen of Pakistan.  He is currently a resident of Monrovia, California.  His address is 616 W. Foothills Blvd., Apt. A, Monrovia, CA 91016.

2.      Plaintiff Sidra Haye ("Ms. Haye") is a citizen of Pakistan.  She is currently a resident of Monrovia, California.  Her address is 616 W. Foothills Blvd., Apt. A, Monrovia, CA 91016.

3.      Plaintiff M. R. ("M. R.") is a U.S. citizen and the one-year-old son of Dr. Raoof and Ms. Haye, his wife.  He is currently a resident of Monrovia, California.  His address is 616 W. Foothills Blvd., Apt. A, Monrovia, CA 91016.

4.      Defendant Rex W. Tillerson is the United States Secretary of State, the head of the United States Department of State ("DOS"), an agency of the United States.  He is named in his official capacity.  His address is:  U.S. Department of State, 2201 C Street, N.W., Washington, D.C.  20520.

5.      Defendant Marcia Pryce is the Chief of the Waiver Review Division ("WRD") of the Bureau of Consular Affairs of the United States Department of State, an agency of the United States.  This office is responsible for making recommendations on waivers pursuant to 8 U.S.C. § 1182(e).  She is named in her official capacity.  Her address is: Waiver Review Division, CA/VO/L/W, U.S. Department of State, SA-17, 11th Floor, 600 19th Street, N.W., Washington, D.C. 20522.

6.      Defendant John F. Kelly is the United States Secretary of Homeland Security, the head of the United States Department of Homeland Security ("DHS"), an agency of the United States.  He is named in his official capacity.  His address is:  U.S. Department of Homeland Security, Washington, D.C. 20528.

7.      Defendant James McCament is the Acting Director of the United States Citizenship and Immigration Services ("USCIS"), which is part of the Department of Homeland Security and is an agency of the United States.  He is named in his official capacity.  His address is:  Office of the Director MS 2000, U.S. Citizenship and Immigration Services, 20 Massachusetts Avenue, N.W., Washington, D.C. 20529-2000.

8.      Defendant Kathy A. Baran is the Director of the USCIS California Service Center, an agency of the United States.  She is named in her official capacity.  Her address is:  USCIS California Service Center, P.O. Box 10129, Laguna Niguel, California 92607-1012.

9.      Defendant Jefferson B. Sessions is the Attorney General of the United States.  He is named in his official capacity.  His address is:  U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530-0001.

## II.  Jurisdiction and Venue

10.     This is an action to review administrative agency action of the U.S. State Department and the USCIS.  The action arises under the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.  Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1361 (mandamus).  This Court may grant relief pursuant to the Act, the APA, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., 28 U.S.C. §§ 1361, and 28 U.S.C. § 1651 (the All Writs Act).

11.     Defendants Rex W. Tillerson, Marcia Pryce, John F. Kelly, James McCament, and Kathy A. Baran had duties to act in conformity with the statute, the regulations, the legislative history, and international law in adjudicating the exceptional hardship waiver application of Dr. Raoof.

12.     Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States in their official capacities, brought in the district where a substantial part of the events or omissions giving rise to the Plaintiffs' claim occurred.  The Defendant Rex W. Tillerson is sued

in his official capacity as Secretary of the Department of State, a United States federal agency

and resident in this district.  The Defendant Marcia Pryce is sued in her official capacity as Chief

of the WRD, a United States federal agency and resident in this district.  The Defendant John F.

Kelly is sued in his official capacity as the Secretary of Homeland Security, a United States

federal agency and resident in this district.  The Defendant James McCament is sued in his

official capacity as the Acting Director of the USCIS, a United States federal agency and resident

in this district.  The Defendant Kathy A. Baran is sued in her official capacity as Director of the

USCIS California Service Center, a United States federal agency.  Because national policy

concerning adjudication of applications for immigration benefits — including I-612 hardship

waiver applications — is formulated by the DHS and DOS and implemented by the USCIS,

venue is proper in this district.

### III.  Introduction and Legal Background

13.     This section of the complaint gives a brief introduction of what happened and

what is at stake, then a summary of the legal procedures involved.  Waivers pursuant to 8 U.S.C.

§ 1182(e) will be called "J-1 waivers."  Exchange visitors in the United States in "J-1"

nonimmigrant (temporary) status will be called "J-1s."

14.     The State Department issued a Not Favorable recommendation on Dr. Raoof's

application for a waiver of the two-year J-1 foreign residence requirement of 8 U.S.C.

§ 1182(e) ("the foreign residence requirement").  This required the USCIS to deny the waiver

application.  Dr. Raoof and his wife are nationals of Pakistan.  Pakistan is one of the most

violent, dangerous, and unstable countries in the world.  There is ongoing sectarian violence.

There is ongoing political violence.  There is ongoing warfare between the Pakistani government

and Taliban extremists.  There is regular terrorism.  There is a very high risk of violent crime,
especially kidnapping.

15.     Dr. Raoof and his wife are from the large southern port city of Karachi.  Karachi
is in a state of near-anarchy, with constant gang wars and sectarian violence.  The applicant's
U.S. citizen child would be singled out for mistreatment and/or kidnapping for ransom because
he is a U.S. citizen.  If a waiver is not granted, he would constantly face an exceptional risk of
harm from crime and random violence.

16.     In addition to the exceptional risk of harm to Dr. Raoof's U.S. citizen son due to
the extremely dangerous conditions in Pakistan, the child will also face exceptional medical and
psychological hardships if the waiver is not granted.  He will also experience exceptional
educational disruption and sociocultural hardships.  The chief claim of this action is that the State
Department must have abused its discretion, because it could not have come to its negative
conclusion through a correct process of reasoned decision-making.

17.     Many foreigners come to the United States as "J-1" exchange visitors ("J-1s").
This is a kind of nonimmigrant (temporary) classification, as set forth in 8 U.S.C. §
1101(a)(15)(J).

18.     Under 8 U.S.C. § 1182(e), there are three ways that a J-1 can become subject to
the two-year foreign residence requirement:  (1) the J-1 program is funded by the U.S.
Government or the J-1's Government; (2) the J-1 is engaged in training that is on the "Skills
List" for the home country; or (3) the J-1 is coming to the United States for graduate medical
education.  The foreign residence requirement prohibits a J-1 from doing certain things, such as

applying for permanent resident status (green card), until he has either fulfilled the requirement

by spending two years in his home country, or until he has obtained a waiver of the requirement.

19.     Dr. Raoof and his wife could only fulfill the requirement in Pakistan.  In

particular, 8 U.S.C. § 1182(e) provides that a J-1 subject to the requirement may fulfill it only in

his country of "nationality or last residence," and "last residence" has consistently been

interpreted by both the USCIS and the State Department to mean a country where the person had

the equivalent of permanent resident status as of the time of first admission to the United States

in J-1 status.

20.     As described with more specificity below, Dr. Raoof became subject to the

foreign residence requirement because he came to the United States in J-1 status for graduate

medical education.  In particular, his program was sponsored by the Educational Commission for

Foreign Medical Graduates ("ECFMG").

21.     Dr. Raoof's wife, Sidra Haye, accompanied him in J-2 status as a derivative.  The

USCIS and State Department policy is that if a J-1 is subject to the two-year foreign residence

requirement, the J-2 is also deemed to be subject to the requirement.  This interpretation by the

USCIS and the State Department has no basis in the statute or the legislative history.  This

unlawful interpretation is being challenged in this action.

22.     Under 8 U.S.C. § 1182(e), there are four ways that a J-1 can pursue a waiver of

the foreign residence requirement (these are specified below).  The instant action concerns Dr.

Raoof's application for a waiver based on the risk of "exceptional hardships" to his U.S. citizen

child.  This kind of waiver application commences with the filing of a DS-3035 data sheet form

with the State Department.  This is followed by the main application, which is submitted on

Form I-612, with accompanying evidence, to the USCIS California Service Center.

23.       Unlike virtually all other waiver application types in U.S. immigration law, this

kind of waiver application is not adjudicated solely by the USCIS.  Instead, the waiver can be

granted only if the State Department issues a favorable recommendation.  In this case, the State

Department issued a Not Favorable recommendation.  This required the USCIS to deny the

waiver application.

### IV.  Factual Allegations

24.       Dr. Raoof first entered the United States on his J-1 visa on July 24, 2009, as a

nonimmigrant exchange visitor under 8 U.S.C. § 1101(a)(15)(J) to undertake a residency

program in general surgery at the University of Arizona in Tucson, Arizona, in 2009.  His wife

accompanied him in J-2 visa status, entering on July 22, 2010.

25.       Dr. Raoof's J-1 visa was sponsored by the Educational Commission for Foreign

Medical Graduates ("ECFMG").

26.       Dr. Raoof has been in valid J-1 status since his admission in said status.  His J-1

status expires on June 30, 2017.  Dr. Raoof's wife has been in valid J-2 status since July 22,

2010.  Her J-2 status expires on June 30, 2017.

27.       Dr. Raoof married Ms. Haye on April 26, 2010.

28.       Dr. Raoof and and Ms. Haye's son, M. R., was born on September 24, 2015, in

California.  Therefore, he is a U.S. citizen by birth.

29.     Dr. Raoof's specialty areas of general surgery and general surgery oncology are in short supply in the United States.  The denial of the waiver application will harm many U.S. citizens and is harmful to the U.S. public interest.

## V.  J-1 Waiver History (Exceptional Hardship Waiver)

30.     All applicants for a J-1 exceptional hardship waiver must fill out an electronic Form DS-3035 on the State Department's website.

31.     After completing the electronic Form DS-3035, the State Department's website generates (1) a "Waiver Review Division Case Number," (2) a "Waiver Review Division Barcode Page," (3) a "Third Party Barcode Page," (4) an electronic DS-3035 in "pdf" format with the applicant's answers, (5) Supplementary Applicant Information Pages (if necessary), and (6) a "Packet Assembly Checklist" and "Instruction Sheet."

32.     All applicants for a J-1 waiver must receive a WRD Case Number from the State Department, which arrives when the DS-3035 is first submitted online.

33.     All applicants for a J-1 waiver must pay a $120.00 filing fee to the State Department for the DS-3035.  After filing the DS-3035 online, the applicant must send a hardcopy of the form, plus fee, to a State Department lockbox in St. Louis, Missouri.

34.     For exceptional hardship and persecution waiver applications, the main waiver application is filed with the USCIS California Service Center.  The application is filed on Form I-612 with accompanying evidence.

35.     All applicants for a J-1 waiver must also pay a filing fee to the USCIS.  For Dr. Raoof, this fee was $585.00.  On December 23, 2016, the USCIS increased this fee to $930.

36.     At some point prior to June 21, 2016, Dr. Raoof, though counsel, filled out Form DS-3035 on the State Department's website to initiate the application process for a J-1 waiver.

37.     The State Department assigned to Dr. Raoof's case WRD Case Number 1130169.

38.     The State Department generated a "Waiver Review Division Barcode Page" and a "Third Party Barcode Page" for submission with Dr. Raoof's waiver application.  Dr. Raoof, through counsel, paid $120.00 to the State Department on some date prior to June 21, 2016.  The State Department Waiver Review Division received Dr. Raoof's signed DS-3035 with fee on June 21, 2016.

39.     On June 8, 2016, Dr. Raoof, through counsel, filed his Form I-612 exceptional hardship waiver application with the USCIS California Service Center.  The applicant was assigned USCIS Case Number WAC-16-181-50461.

40.     Dr. Raoof's I-612 materials included the WRD Case Number as well as his Form DS-3035 and the barcode sheet generated by the State Department.

41.     Dr. Raoof is statutorily eligible to seek an exceptional hardship waiver because he has one qualifying relative, who is a co-plaintiff in this action:  his U.S. citizen son, M. R.

42.     As documented in the application, Dr. Raoof's U.S. citizen child would suffer many exceptional hardships if Dr. Raoof and Ms. Haye are required to return to Pakistan for the fulfillment of the two-year foreign residence requirement.  In this case, as explained in the application, given the USCIS and State Department policy that J-2 derivatives are subject if the J-1 is subject, there is only one possible travel option in which Dr. Raoof and the entire family would relocate to Pakistan.  Therefore, if a waiver is not granted, a U.S. citizen child, M. R., will definitely suffer all of the hardships documented in the waiver application.

43.     Dr. Raoof's exceptional hardship waiver application complied with all statutory and regulatory requirements specified by the Defendants.

44.     On December 1, 2016, Dr. Raoof's Form I-612 waiver application was reviewed by the Director of the California Service Center, Kathy A. Baran.  Ms. Baran made the legal determination that Dr. Raoof's qualifying relative would suffer exceptional hardships if a waiver was not granted.  This finding is evidenced on a Form I-613 prepared by the USCIS.  This is a special, one-page transmittal form, a companion to the I-612, that is endorsed on the top by the USCIS, then placed on top of the application when it is transmitted to the State Department.  The USCIS never creates an I-613 in an I-612 case unless it has determined that the case should be approved.  As indicated on the I-613, prior to Ms. Baran's review, an Adjudications Officer and a Supervisory Adjudications Officer all made the same finding that Dr. Raoof's qualifying relative would suffer exceptional hardships without the grant of a waiver.  Thus, the USCIS supported the approval of a waiver for Dr. Raoof.

45.     The State Department regulation at 22 C.F.R. § 41.63(b)(2)(i) states that the Department of Homeland Security "shall transmit a copy of his [sic] determination together with a summary of the details of the expected hardship . . ." to the State Department.  This is obviously necessary to effectuate the adjudication procedure set forth by 8 U.S.C. § 1182(e).

46.     Without discovery, it is impossible to know whether Defendant Kathy A. Baran violated her duty under the statute and regulations by not transmitting a sufficient summary of the details of the expected hardship to the State Department.

47.     Without discovery, it is impossible to know whether Defendant Kathy A. Baran violated her duty under the statute and regulations because the summary of hardship was

incomplete, lacking in detail, and otherwise insufficient to convey the depth of the hardship that will be suffered absent a waiver.

48.     Without discovery, it is impossible to know whether Defendants John F. Kelly, James McCament, and Kathy A. Baran failed to transmit a complete copy of the I-612 waiver application and all supporting materials to Defendants Rex W. Tillerson and Marcia Pryce.

49.     On or about December 1, 2016, Dr. Raoof's waiver application was transmitted in unknown form from the USCIS California Service Center to the WRD, with the USCIS seeking the recommendation of the State Department on the waiver application.

50.     On December 8, 2016, the WRD received the Form I-612 waiver application from the USCIS California Service Center.  It is not clear if the entire waiver application was received by the WRD.

51.     On information and belief, Defendants Rex W. Tillerson and Marcia Pryce failed to receive and/or review the entire I-612 waiver application and all supporting materials prior to issuing their recommendation.

52.     On December 8, 2016, the WRD received something called a Letter of Need.  On information and belief, the WRD requested this document from ECFMG.  This is believed to be a document required by regulation for "ECFMG certification," which is necessary for ECFMG sponsorship, which is necessary for admission to the United States in J-1 status for graduate medical education.  See 22 C.F.R. § 62.27(b)(6).

53.     The substance of the Letter of Need is unknown.

54.     On information and belief, prior to approximately 2010 the State Department did not seek and review Letters of Need in ECFMG-sponsored J-1 hardship waiver cases.

55.     The WRD uses the bottom portion of Form I-613 to state its position on waiver applications for transmission to the Department of Homeland Security.  The Form I-613 contains a box that allows the State Department to explain the basis for a Not Favorable recommendation.

56.     On February 8, 2017, defendants Rex W. Tillerson and Marcia Pryce issued a Not Favorable recommendation and transmitted said recommendation on Form I-613 to Defendant Kathy A. Baran, Director of the California Service Center.

57.     The WRD gave no explanation at all for its denial.  In particular, the WRD did not use the allotted space on the I-613 to explain the basis of its recommendations.  Historically, the State Department attached a separate sheet, which stated:  "Pursuant to 22 CRF [sic] 41.63 (b)(2)(ii), the Waiver Review Division has reviewed the program, policy, and foreign relations aspects of this case and has determined that these considerations outbalance the Exceptional Hardship claims presented.  Therefore, it is the recommendation of the Department of State that the foreign residence requirement of INA 212(e) not be waived."  No such sheet was attached to the I-613 in Dr. Raoof's case.

58.     The WRD is required by regulation to review the (1) program, (2) policy, and (3) foreign relations aspects of an I-612 case, make a recommendation, and forward it to the appropriate office at the USCIS.

59.     The basis of the denial, set forth above, is a facially insufficient reason to issue a Not Favorable recommendation on a Form-I-612 waiver case under State Department regulations.

60.     The WRD's Not Favorable recommendation did not provide any explanation regarding the basis for the denial and did not include the attachment set forth above.

–13–

61. The WRD's Not Favorable recommendation does not provide any evidence that the WRD balanced the program, policy, and foreign relations considerations against the exceptional hardships in the case.

62. Out of all ECFMG-sponsored J-1 hardship waiver applications filed by this law firm between approximately 2000 and 2011, not one received a Not Favorable recommendation from the State Department.

63. On information and belief, the State Department changed its internal policies and standards in the adjudication of ECFMG-sponsored J-1 hardship waiver cases on or about 2011. But the statute has not changed. The regulations have not changed. And there has been no public announcement of any such change.

64. In the instant case, the State Department did not provide a reasoned analysis indicating that prior policies and standards of adjudication are being deliberately changed, as it is required to do under general principles of administrative agency law. See Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1970).

65. The WRD maintains a website outlining the processes and procedures for seeking a J-visa waiver. Its address is: http://travel.state.gov/content/visas/english/study-exchange/ student/residency-waiver.html.

66. The WRD website has a Frequently Asked Questions page that answers the question "Why would a recommendation application be denied by the Waiver Review Division?" The answer states: "Recommendation applications are denied when the reasons given for requesting the waiver do not outweigh the program and foreign policy considerations of the

exchange visitor program.  For this reason, waiver recommendation applications from exchange

visitors who received U.S. government funding are generally denied."

67.     The basis of such a denial is facially invalid because the WRD is required to

assess the program, policy, and foreign relations aspects of a case under 22 C.F.R. § 41.63.

Additionally, Dr. Raoof's case did not involve U.S. government funding.  His residency program

was sponsored by the ECFMG.

68.     The WRD maintains a website where one can track the progress of a J-1 waiver

case.  Its address is:  http://j1visawaiverstatus.state.gov/.

69.     The procedures utilized by the WRD for adjudication of J-1 waiver applications

have changed over the past several decades.  In particular:

70.     The Form DS-3035 did not exist prior to the late 1990s.

71.     Most J-1 program and waiver matters used to be handled by an agency called the

U.S. Information Agency (USIA).  The USIA was abolished in 1999.  At that time, its "program"

functions were transferred to the State Department's Office of Academic Exchange Programs,

and its "waiver" functions were transferred to the new WRD within the State Department's

Bureau of Consular Affairs.  The USIA started charging a filing fee for the Data Sheet form

(which later became the DS-3035) in approximately 1998.

72.     J-1 waiver applicants were not required to submit any materials directly to the

USIA or State Department prior to sometime in the 1990s.  In earlier times, in cases where the

Immigration and Naturalization Service (INS, the predecessor to the USCIS) made a finding of

exceptional hardship, the District Director would submit a complete copy of the application

materials to the USIA or State Department to obtain that agency's recommendation. This required no independent action on the part of the applicant.

73.     On March 9, 2017, Defendant Kathy A. Baran, who earlier had recommended that the waiver be approved, denied the waiver application for two main reasons. The first basis of the denial is that the State Department had issued a Not Favorable recommendation. Kathy A. Baran denied the case on this basis even though there was zero explanation from the State Department concerning the basis of the denial.

74.     The second reason given by Kathy A. Baran states:

> In reaching this conclusion, the Waiver Review Division considered a range of facts relevant to assessing program, policy, and foreign relations interests in your case and determined that you would provide valuable knowledge, skills and expertise as a physician in the field of general surgical oncology. If you fail to fulfill your two-year foreign residence requirement, Pakistan would lose the opportunity to gain from your valuable experience in the United States.[1]

This is a facially invalid rationale for the denial because it does not show that the State Department adhered to its own regulations, in addition to other law that applies to this case, such as 8 U.S.C. § 1182(e), the legislative history, the U.S. Constitution, and treaty law. This is also unlawful for the State Department to give more weight to the needs of citizens of Pakistan than it did to the interests of U.S. citizen M. R. This is especially true considering the fact that the U.S.

---

[1] This is the same rationale issued in <u>Khan v. Kerry</u>, 14-cv-1338 (C.D. Cal. filed Feb. 20, 2014). <u>Khan v. Kerry</u> involved an ECFMG-sponsored physician from Pakistan. It involved one healthy, U.S. citizen child. Both parents were subject to the two-year foreign residence requirement. As such, there was only one travel option, where the entire family would need to relocate to the home country. This is the same scenario faced by Dr. Raoof and Ms. Haye. The Department of State and USCIS immediately acquiesced to the grant of the waiver and the suit was voluntarily dismissed shortly thereafter.

government has a statutory duty to protect U.S. citizen qualifying relatives if such citizens would face exceptional hardship.

75.     There is no administrative appeal from the March 9, 2017, decision.

76.     The plaintiffs have exhausted their administrative remedies.

77.     The February 8, 2017, recommendation by the State Department is irrational and contrary to the statutory standards of the APA and the Immigration and Nationality Act, the Department of Homeland Security and State Department regulations, the intent of Congress in enacting the J-1 visa waiver, and to the due process of law—in that it fails to state any basis for the denial, or discuss any facts relevant to the decision, or demonstrate that it balanced the exceptional hardships to a U.S. citizen child with the program, policy, and foreign relations aspects of this case.

78.     Dr. Raoof's waiver application is meritorious and should be approved.

## VI.  J-2 Derivative

79.     The USCIS and State Department have long held that a J-2 derivative is subject to the two-year foreign residence requirement if the J-1 is subject.  The policy and position of the USCIS and the State Department that J-2 derivatives are subject if the J-1 is subject is being challenged in this action.

80.     Ms. Haye is considered subject to the two-year foreign residence requirement under the State Department and USCIS interpretation that if a J-1 is subject, all J-2 derivatives are also subject.

81.     The plain language of 8 U.S.C. 1182(e) does not make J-2 derivatives subject in the context of the J-1 admission or acquisition of J-1 status to pursue graduate medical education.

Specifically, the statute provides as follows:

> No person admitted under section 101(a)(15)(J) or acquiring such
> status after admission . . . who came to the United States or
> acquired such status in order to receive graduate medical education
> or training, shall be eligible to apply for an immigrant visa, or for
> permanent residence, or for a nonimmigrant visa under section
> 101(a)(15)(H) or section 101(a)(15)(L) until it is established that
> such person has resided and been physically present in the country
> of his nationality or his last residence for an aggregate of at least
> two years following departure from the United States . . . .

82.     Ms. Haye was admitted as a J-2 dependent to her husband's J-1 program, and thus

she is not subject to the two-year foreign residence requirement under the plain language of 8

U.S.C. § 1182(e), which is quoted above, notwithstanding contrary interpretations by the State

Department and the USCIS.

83.     The legislative history of 8 U.S.C. § 1182(e) contains no indication that Congress

intended J-2 derivatives to become subject to the two-year foreign residence requirement.

84.     Two administrative decisions (Matter of Gatilao, 11 I. & N. Dec. 893 (BIA 1966)

and Matter of Tabcum, 14 I. & N. Dec. 113 (Reg. Comm'r 1972)) show that the INS and the

Board of Immigration Appeals (BIA) have held that a J-2 derivative is subject to the two-year

foreign residence requirement if the J-1 is subject.  The plain language of 8 U.S.C. § 1182(e)

takes precedence over these administrative decisions.

85.     The same day that Matter of Tabcum was decided, the State Department amended

its regulations to state that if an alien is subject to the two-year foreign residence requirement, so

are his spouse and child.  37 Fed. Reg. 7156 (Apr. 11, 1972).  The State Department offered no

reason for the change and did not engage in formal rule-making under the APA 5 U.S.C. § 553.

This regulation is now found at 22 C.F.R. § 41.62(c)(4).  This regulation runs counter to the plain language interpretation in the statute, set forth above.

86.     The USCIS has issued a similar regulation at 8 C.F.R. § 212.7(c)(4).  The USCIS did not engage in formal rule-making under APA 5 U.S.C. § 553.

87.     These regulations run counter to the plain-language interpretation in the statute, set forth above.

88.     The USCIS (formerly INS) and the State Department have issued various public statements that if a J-1 is subject, the J-2 is also subject.  This public interpretation is improper under the plain language of 8 U.S.C. § 1182(e).  Under the plain language of 8 U.S.C. § 1182(e), J-2 derivatives are not subject even if the J-1 is subject.

89.     Given the failure of both agencies to engage in formal rule-making under APA 5 U.S.C. § 553, both regulations should be invalidated.

## VII.  Irreparable Injury

90.     Absent approval of Dr. Raoof's waiver application, Plaintiffs will suffer irreparable injury and many severe and exceptional hardships.

91.     U.S. citizen Plaintiff M. R. faces an exceptional risk of physical harm due to the exceptionally dangerous country conditions in Pakistan.  Pakistan is one of the most violent, dangerous, and unstable countries in the world.  There is ongoing sectarian violence.  There is ongoing political violence.  There is ongoing warfare between the Pakistani government and the Taliban extremists.  There is regular terrorism.  There is a very high risk of violent crime, especially kidnapping.

92.     Dr. Raoof and Ms. Haye are from the large southern port city of Karachi.  Karachi is in a state of near-anarchy, with constant gang wars and sectarian violence.

93.     M. R. would be singled out for mistreatment or kidnapping for ransom because he is a U.S. citizen.  He would constantly face the risk of harm from crime and random violence.

94.     Dr. Raoof would be singled out because of his close ties to the United States and his status as a physician.  While hardship to the Dr. Raoof and his wife do not directly count in this kind of waiver application, death or serious injury to a parent would have a lifetime of negative consequences for their U.S. citizen child M. R.

95.     M. R. would face exceptional medical hardships if his parents are compelled to return to Pakistan to fulfill the two-year foreign residence requirement.  Compared to life in the United States, in Pakistan M. R. would face an exceptionally high risk of medical hardships due to adverse environmental factors, the risk of infectious disease, and the inferior medical system.

96.     M. R. would face exceptional psychological hardships if his parents are compelled to return to Pakistan to fulfill the two-year foreign residence requirement because the family would be living in a constant state of great fear and distress.

97.     M. R. would face exceptional educational disruption if his parents are compelled to return to Pakistan to fulfill the two-year foreign residence requirement.  His early education in Karachi would be vastly inferior to the education he would receive if his parents were permitted to remain in the United States.

98.     M. R. would face exceptional sociocultural hardships if his parents are compelled to return to Pakistan to fulfill the two-year foreign residence requirement.  It would be an

extreme case of culture shock for him to be suddenly relocated from a stable life in California to the chaos of Karachi.

99.     It would be an exceptional hardship to the public interest of the United States if Dr. Raoof is compelled to return to Pakistan to fulfill the two-year foreign residence requirement. Dr. Raoof's specialty area of general surgery is in short supply in the United States. Denial of a waiver would cause harm to many U.S. citizens and would harm the U.S. public interest.

100.     The above hardships would all exist under the only possible travel option, in which Dr. Raoof and his whole family would relocate to Pakistan.

**COUNT ONE:  ABUSE OF DISCRETION
AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

101.     Paragraphs 1 through 100 above are repeated and realleged as though fully set forth herein.

102.     The Defendants' denial of Dr. Raoof's I-612 waiver application is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress, and it is therefore arbitrary and capricious, because the Defendants failed to consider all the evidence in the record before rendering a decision; ignored substantial evidence in the record without any rational basis; failed to weigh the evidence presented against the program, policy, and foreign relations aspects; and/or failed to state a valid reason for the denial.

103.     The Defendants' adjudication of the I-612 waiver application is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress because there is no evidence that the Defendants reviewed the program, policy, and foreign relations

aspects of this case, and the Defendants routinely fail to provide any valid explanation for their recommendations in such cases.

104.     On information and belief, the State Department intentionally does not provide the basis for its decisions in J-1 waiver cases so that it can evade judicial review.

105.     The Defendants acted outside the scope of discretion granted by Congress.

106.     The Defendants' denial of the application therefore violates the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 702, and 706(1), and otherwise constitutes abuse of discretion.

## COUNT TWO:  RULE-MAKING
## AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

107.     Paragraphs 1 through 106 above are repeated and realleged as though fully set forth herein.

108.     The State Department's amendment to its regulations in 37 Fed. Reg. 7156 (Apr. 11, 1972) (amending 22 C.F.R. § 41.65(b) by adding subsection (b)(3) to state:  "If an alien is subject to the 2-year foreign residence requirement of section 212(e) of the Act, the spouse or child of such alien shall also be subject to such a requirement if such spouse or child is admitted to the United States pursuant to section 101(a)(15)(J) of the Act for the purpose of accompanying or following to join such alien.") is a substantive rule that creates law and imposes extra-statutory obligations inconsistent with its authority delegated by Congress.  The regulation is currently published as 22 C.F.R. § 41.62(c)(4).  The State Department did not engage in formal rule-making under APA 5 U.S.C. § 553.

109.    The USCIS has issued a similar regulation at 8 C.F.R. § 212.7(c)(4).  The USCIS did not engage in formal rule-making under APA 5 U.S.C. § 553.

110.    The State Department regulation at 22 C.F.R. § 41.62(c)(4) and the USCIS regulation at 8 C.F.R. § 212.7(c)(4) are both inconsistent with the plain language of 8 U.S.C. § 1182(e).

111.    The State Department's and USCIS's amendments and 22 C.F.R. § 41.62(c)(4) and 8 C.F.R. § 212.7(c)(4) violate the Administrative Procedure Act, 5 U.S.C. § 553.

**COUNT THREE:  DUE PROCESS VIOLATION (RIGHT TO LIFE)**

112.    Paragraphs 1 through 111 above are repeated and realleged as though fully set forth herein.

113.    The Plaintiffs have a fundamental right to life.

114.    The Defendants' denial of Dr. Raoof's waiver application threatens his life and the life of his family because if he is forced to return to Pakistan, he and/or his family may be killed or severely injured by the ongoing violence in that country.  A forced relocation of M. R. to Pakistan would also subject him to exceptional medical and psychological hardships.

115.    The Defendants' denial of Dr. Raoof's waiver application violates his family's right to due process of law under the Fifth Amendment to the United States Constitution.

**COUNT FOUR:  DUE PROCESS VIOLATION (RIGHT TO FAMILY UNITY)**

116.    Paragraphs 1 through 115 above are repeated and realleged as though fully set forth herein.

117.    M. R. has a fundamental right to family unity with his parents.

118.     M. R. has a fundamental right to reside in the United States because he is a U.S. citizen.

119.     In J-1 exceptional hardship waiver application cases, the USCIS and the WRD apply a multi-pronged hardship waiver analysis that examines whether sufficient hardship exists under all travel alternatives.

120.     Reviewing the hardships in all travel alternatives ignores the fundamental rights of U.S. citizens to remain in the United States and the fundamental right to family unity.

121.     The Defendants' actions in this case violated M. R.'s fundamental rights under the United States Constitution.

## COUNT FIVE:  DUE PROCESS VIOLATION (PROPERTY INTEREST)

122.     Paragraphs 1 through 121 above are repeated and realleged as though fully set forth herein.

123.     Dr. Raoof has a property interest in the application fee that he paid to the State Department.

124.     The Defendants' denial of Dr. Raoof's waiver application without any rational basis violates the Plaintiffs' right to due process of law under the Fifth Amendment to the United States Constitution.

## COUNT SIX:  FAILURE TO FOLLOW MORE RELAXED ADJUDICATION STANDARD INTENDED BY CONGRESS

125.     Paragraphs 1 through 124 above are repeated and realleged as though fully set forth herein.

126.    Congress has suggested that a more relaxed attitude should be taken in determining whether a waiver should be granted in a case like Dr. Raoof's.  See House Report 721, Subcommittee of the House Committee on the Judiciary, 87 Cong., 1st Sess. (1961), at 122. See also Matter of Duchneski, 11 I. & N. Dec. 583 (Dist. Dir. 1966) (waiver recommended for approval by State Department) and Matter of Coffman, 13 I. & N. Dec. 206 (Dep. Assoc. Comm'r 1969) (waiver recommended by State Department).

127.    Based on congressional intent, and program, policy, and foreign relations considerations, Dr. Raoof's case should have been reviewed under the relaxed standard because the applicant came to the United States in J-1 status not only to gain but also to impart his already acquired knowledge, heritage, and culture, a duty which he faithfully and successfully performed.

128.    The Defendants' denial of Dr. Raoof's I-612 waiver application is contrary to the law and an abuse of discretion because the Defendants failed to apply the more relaxed standard of review to his case.

## COUNT SEVEN:  FAILURE TO PROVIDE REASONED ANALYSIS DESCRIBING A MARKED CHANGE IN POLICY IN THE ADJUDICATION OF ECFMG-SPONSORED I-612 HARDSHIP WAIVER CASES

129.    Paragraphs 1 through 128 above are repeated and realleged as though fully set forth herein.

130.    Courts have held that an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed.  See Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1970).

131.    Out of all ECFMG-sponsored J-1 hardship cases filed by this law firm, where the USCIS recommended the case for approval, not one case received a Not Favorable

recommendation from the State Department between approximately 2000 and 2011.  In the first

quarter of 2012, three ECFMG-sponsored cases received Not Favorable recommendations

without any explanation.  Between that quarter and the first quarter of 2014, the firm received

zero Not Favorable recommendations on ECFMG-sponsored cases.  In the first quarter of 2014,

the firm then received the ECFMG denial in the Khan v. Kerry case, where the explanation was

that the State Department did not want to deprive Pakistani nationals of the training received by

the applicant.  The State Department put the lives of Pakistani nationals ahead of the life and

well-being of a U.S. citizen child.  The State Department immediately acquiesced to the grant of

the waiver after suit had been filed.  From the first quarter of 2014 to the first quarter of 2017, the

firm received zero Not Favorable recommendations in ECFMG-sponsored cases.  To date in this

first quarter of 2017, the firm has received four Not Favorable recommendations.  None of these

four Not Favorable recommendations in 2017 had any explanation for the erratic change in

policy.

132.    The Defendants' denial of Dr. Raoof's waiver application without explaining the

change in policy and standards violates federal decisional law that mandates such explanations.

## COUNT EIGHT:  VIOLATION OF TREATY

133.    Paragraphs 1 through 132 above are repeated and realleged as though fully set

forth herein.

134.    Ratified treaties constitute the supreme law of the land under Article VI of the

United States Constitution.

135.    President Jimmy Carter signed the International Covenant on Civil and Political

Rights ("I.C.C.P.R.") on October 5, 1977.  On June 8, 1992, the I.C.C.P.R. was ratified by the

United States Senate pursuant to Article II, Section 2 of the United States Constitution.  The United States is therefore a party to the I.C.C.P.R.

136.    The Defendants have a duty to adhere to the I.C.C.P.R. when adjudicating waiver applications.

137.    The Defendants' action in denying Dr. Raoof's I-612 waiver application without any rational basis violates the United States' obligations under various articles of the I.C.C.P.R. In particular, it violates Articles 1, 12, 17, 18, 23, and 24, in addition to possible violations of other articles.

## COUNT NINE:  DECLARATORY JUDGMENT

138.    Paragraphs 1 through 137 above are repeated and realleged as though fully set forth herein.

139.    This Court has authority to issue a declaratory judgment regarding the rights, privileges, and duties of the parties under 28 U.S.C. § 2201.

140.    This Court should issue a declaratory judgment establishing that Dr. Raoof is eligible for a J-1 waiver and that due to the exceptional hardships that will be suffered by his U.S. citizen child, he is entitled to a waiver.

141.    This Court should declare that the Defendants' adjudication of waiver applications without properly reviewing the program, policy, and foreign relations aspects of the case, and without stating a valid reason for the Not Favorable recommendation, is contrary to the statutory standards, regulations, legislative history, congressional intent, and due process of law.

142.    This Court should declare that if the WRD issues a Favorable recommendation, the USCIS is required by law, under 8 U.S.C. § 1182(e), to grant the waiver application.

143.     This Court should declare that 22 C.F.R. § 41.62(c)(4) and 8 C.F.R. § 212.7(c)(4) are substantive rules that create law and imposes extra-statutory obligations inconsistent with 8 U.S.C. § 1182(e).

144.     This Court should declare that the State Department's amendment to its regulations at 37 Fed. Reg. 7156 (Apr. 11, 1972) violates the Administrative Procedure Act, 5 U.S.C. § 553.  It should also declare that the Department of Homeland Security's amendment to its regulations at 8 C.F.R. § 212.7(c)(4) violates the Administrative Procedure Act, 5 U.S.C. § 553.

145.     This Court should declare that 22 C.F.R. § 41.62(c)(4) and at 8 C.F.R. § 212.7(c)(4) are invalidated due to the rule-making violations under the Administrative Procedure Act.

146.     This Court should declare that Plaintiff Sidra Haye is not subject to the two-year foreign residence requirement.

147.     This Court should declare that the denial of Dr. Raoof's waiver application violates his family's right to due process of law under the Fifth Amendment to the United States Constitution.

148.     This Court should declare that M. R. has a fundamental right to family unity with his parents.

149.     This Court should declare that M. R. has a fundamental right to reside in the United States because he is a U.S. citizen.

150.     This Court should declare that the USCIS and WRD policy of examining all travel alternatives violates the fundamental right to family unity and the fundamental right of U.S. citizens to reside in the United States.

151.     This Court should declare that the Defendants' actions in this case violated M. R.'s rights under the United States Constitution.

152.     This Court should declare that Dr. Raoof has a property interest in the application fee that he paid to the State Department.

153.     This Court should declare that the Defendants' denial of Dr. Raoof's waiver application without any rational basis violates the Plaintiffs' right to due process of law under the Fifth Amendment to the United States Constitution.

154.     This Court should declare that Congress suggested that a more relaxed standard be applied in a waiver case like Dr. Raoof's.

155.     This Court should declare that Dr. Raoof's case should be reviewed under the relaxed standard suggested by Congress, which has historically been followed by the Defendants.

156.     This Court should declare that the State Department has a duty to explain its change in policy and standards with respect to the adjudication of J-1 hardship cases where ECFMG is the sponsor.

157.     This Court should declare that the Defendants have a duty to adhere to the I.C.C.P.R. when adjudicating waiver applications.

158.     This Court should declare that the Defendants' denial of the I-612 hardship waiver application violates various articles of the I.C.C.P.R.

159.   This Court should declare that the United States Government has a statutory duty under 8 U.S.C. § 1182(e) to protect the lives of U.S. citizen qualifying relatives if it is proven that such relatives would face exceptional hardship.

160.   This Court should declare that the United States Government, in balancing "program, policy, and foreign relations" in J-1 waiver cases, may not give more weight to the putative interests of citizens of foreign countries than it does to the life and security of U.S. citizen qualifying relatives.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

A.  Declare the Defendants' adjudication of Dr. Raoof's I-612 waiver application to be in violation of the statute, regulations, legislative intent, agency procedures, treaty law, and the Constitution;

B.  Declare that Dr. Raoof is statutorily eligible for a waiver under 8 U.S.C. § 1182(e);

C.  Declare that the Defendants' denial of Dr. Raoof's waiver application was unlawful, arbitrary and capricious, contrary to the statute, regulations, legislative history, congressional intent, and in violation of the Constitution, and the I.C.C.P.R.;

D.  Declare that Dr. Raoof's waiver application is meritorious and should be approved;

E.  Order the Defendants to approve the waiver;

F.  Grant an award of attorneys's fees and costs; and

G.  Grant such other relief as the Court may deem just and proper.

Dated: June 14, 2017

> /s/ Brian C. Schmitt
> BRIAN C. SCHMITT
> Hake & Schmitt
> P.O. Box 540 (419 Main St.)
> New Windsor, Maryland  21776
> (410) 635-3337
> Attorney for Plaintiffs
> Bar No.: MD0023